# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| JAMES O'QUINN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO.: 5:21-cv-00461-LSC-SGC |
| | ) |
| DEBORAH TONEY, | ) |
| in her individual capacity; | ) |
| JESSE WHITE, MIKE JONES, | ) |
| JEREMY PELZER, and | ) |
| KENNETH JOSHUA, | ) |
| in their individual | ) |
| capacities, | ) |
| | ) |
| Defendants. | ) |

## SECOND AMENDED COMPLAINT

For his Complaint against Defendants named herein, James O'Quinn states:

### PARTIES

1. Plaintiff, James O'Quinn, is a male over the age of 21 was an inmate at the Alabama Therapeutic Education Facility in Columbiana, Alabama at the time of the filing of this Complaint.

2. O'Quinn was an inmate at Limestone Correctional Facility, which is located in the Northern District, at the time of the subject occurrence.

3. Defendant Warden Deborah Toney is a female over the age of 21 and, upon information and belief, resides within the Northern District of Alabama.

1

4.     Defendant Toney was the Warden of Limestone Correctional Facility at all times relevant to this lawsuit and is named in her individual capacity.

5.     Defendant Toney, as Warden, was legally responsible for prison operations at Limestone Correctional Facility, as well as for the safety and welfare of the inmates confined there.

6.     Defendant Jesse White is a male over the age of 21 and, upon information and belief, resides within the Northern District of Alabama.

7.     Defendant White was a correctional officer of the Alabama Department of Corrections who was, at all times relevant to this lawsuit, assigned to Limestone Correctional Facility.

8.     Defendant Mike Jones is a male over the age of 21 and, upon information and belief, resides within the Northern District of Alabama.

9.     Defendant Jones was a correctional officer of the Alabama Department of Corrections who was, at all times relevant to this lawsuit, assigned to Limestone Correctional Facility.

10.    Defendant Jeremy Pelzer is a male over the age of 21 and, upon information and belief, resides within the Northern District of Alabama.

11.    Defendant Pelzer was a correctional officer of the Alabama Department of Corrections who was, at all times relevant to this lawsuit, assigned to Limestone Correctional Facility.

12. Defendant Kenneth Joshua is a male over the age of 21 and, upon information and belief, resides within the Northern District of Alabama.

13. Defendant Joshua was a correctional officer of the Alabama Department of Corrections who was, at all times relevant to this lawsuit, assigned to Limestone Correctional Facility.

## JURISDICTION AND VENUE

14. O'Quinn brings this action pursuant to the Enforcement Acts, as codified at 43 U.S.C. § 1983 and 18 U.S.C. § 242, and the law of the State of Alabama.

15. This Court has original jurisdiction over this action and the claims made herein pursuant to 28 U.S.C. § 1331.

16. Venue is proper in the Northern District of Alabama, given that O'Quinn and most of the Defendants in this action presently reside in the Northern District and the events giving rise to this action occurred in the Northern District of Alabama.

## FACTS

17. Prior to the incident complained of herein, O'Quinn was convicted and sentenced to confinement with the Alabama Department of Corrections.

18. In December 2020, the Department of Justice (DOJ) initiated an action under the Civil Rights of Individualized Persons Act (CRIPA) against ADOC due to the

unconstitutional level of violence from inmate-on-inmate attacks and a pattern of excessive force by corrections officers suffered by O'Quinn and other inmates at Limestone and other state correctional facilities. Since that time, correctional officers at Limestone have publicly stated that they have lost control of the system and are at the mercy of inmates. There are so few corrections officers and so many inmates at Limestone that corrections officers have resorted to brutality to keep control of the incarcerated population there.

19. Prior to filing the CRIPA action, the DOJ conducted a lengthy and thorough investigation, which confirmed that there has been a longstanding pattern and practice of corrections officers using excessive force against prisoners at Limestone and other ADOC correctional facilities.

21. At the time of the severe beating suffered by O'Quinn on or about March 29, 2019, which is the subject of this lawsuit, he was incarcerated at Limestone Correctional Facility, a high-security correctional facility located in Limestone County, Alabama.

22. On or about March 29, 2019, O'Quinn was in the H-Dormitory kitchen preparing something to eat, when he was approached by a correctional officer, who stated that O'Quinn appeared intoxicated and immediately placed him in handcuffs, securing his hands behind his back.

23. O'Quinn was compliant as he was marched to the H-Dormitory gate and turned over to the custody of Defendant correctional officers White and a currently unidentified correctional officer (previously incorrectly identified as "Brewer"), who were tasked with taking O'Quinn to the shift office.

24. While escorting O'Quinn (whose hands were cuffed behind his back) down the hallway with an officer on either side of O'Quinn, Defendant White took his own arm and placed O'Quinn in an "arm bar takedown" position, which is known to place undue stress and cause excruciating pain to an inmate's shoulders.

25. When O'Quinn complained that the officers were hurting him, Defendant White kicked O'Quinn's legs out from under him, causing him to fall to the ground, striking his head on the cement floor.

26. While O'Quinn was on the floor, still handcuffed, the unknown officer immediately began spraying mace into his face, as Defendant White began kicking and beating O'Quinn, striking him in the back of the head.

27. The brutal beating of O'Quinn by Defendant White and the unknown officer continued as Defendants Lieutenant Joshua, Lieutenant Jones and Sergeant Pelzer arrived on the scene. As White and the unknown officer continued to kick and punch O'Quinn in the face, head and body, officers Jones, Pelzer and Joshua failed and/or refused to intervene to stop the beating.

28. O'Quinn remained on the ground, where he was kicked repeatedly all over his body, including the face and head. Because he had been maced and beaten and was on the floor, in and out of consciousness, while O'Quinn positively identified Defendant White as one of the officers who brutally beat him, he is not sure of the identity of the unknown officer, and is unsure whether Defendants Jones, Pelzer and Joshua, who witnessed the beating but did nothing to stop it, also participated in the beating.

29. During the course of the assault by Defendant White and the unknown officer, O'Quinn sustained serious traumatic injuries to his head, face and body including, but not limited to, a traumatic brain injury, permanent hearing loss, vision loss, numerous contusions on his body, as well as mental and emotional injuries.

## COUNT I
## 42 U.S.C. § 1983
## EIGHTH AMENDMENT-EXCESSIVE FORCE

33. O'Quinn adopts and incorporates by reference paragraphs 1 through 29 of this Complaint.

34. The Eighth Amendment places a prohibition on cruel and unusual punishment.

35. The unnecessary and wanton infliction of pain by Defendant White and an unknown officer against O'Quinn constitutes excessive force and is a violation of the Eighth Amendment.

36. Defendant White's use of force, as well as the force used by the unknown officer, was excessive and unnecessary under the circumstances.

37. The pain inflicted by Defendant White and the unknown officer was malicious and sadistic and solely for the purpose of causing harm to O'Quinn, and not in any way a good-faith effort to maintain or restore discipline.

38. O'Quinn was not a threat and was, in fact, virtually defenseless against Defendant White and the unknown officer, who beat him while he was on the floor with his hands cuffed behind his back.

39. Defendant White's use of force, as well as the force used by the unknown officer, was disproportionate to the amount of resistance by O'Quinn, if any.

40. It is clear and unequivocal that the force used by Defendant White and the unknown officer against O'Quinn was excessive and unnecessary, particularly when O'Quinn was on the ground, handcuffed, calling for help and begging Defendant White and the unknown officer to stop beating him.

41. The unlawful use of excessive force by Defendant White and the unknown officer caused serious permanent injuries to O'Quinn.

## COUNT II
## EIGHTH AMENDMENT
## FAILURE TO PROVIDE ADEQUATE MEDICAL CARE

42. O'Quinn adopts and incorporates by reference paragraphs 1 through 29 of this Complaint.

43. On or about March 29, 2019, as a result of being beaten by Defendant White and an unknown correctional officer, O'Quinn sustained serious injuries to his head, face, and body.

44. On March 30, 2019, O'Quinn filled out a sick call request form, stating that his face hurt, that his hands were numb and swollen and that he believed he had broken ribs. Plaintiff was not provided any medical evaluation or treatment for his injuries.

45. On March 31, 2019, O'Quinn filled out another form requesting medical treatment for blurry vision, dizziness and severe headaches due to the head injury he sustained in the beating, as well as a complaint about numbness in his hands. Plaintiff again was not provided any medical treatment.

46. On April 1, 2019, O'Quinn filled out a third request for medical treatment, complaining of a severe pressure headache with dizziness and nausea, explaining that he had sustained blunt force trauma to his head. He further stated that he was bleeding from his left ear, that his hands were still numb, that he had bruised or cracked ribs. Plaintiff once again was not provided any medical treatment for his serious injuries.

47. On April 21, 2019, O'Quinn made yet another sick call request for medical treatment due to severe headaches, blurred vision, reduced hearing in his right ear

and numbness in both hands.  O'Quinn never received a proper evaluation and/or medical treatment for the serious injuries that he sustained as a result of the severe beating he received from Defendant White and the unknown officer.

48. Deliberate indifference to a serious medical need is a constitutional violation because it constitutes the unnecessary and wanton infliction of pain, which is proscribed by the Eighth Amendment.

49. Due to severe understaffing, there are so few correctional officers at Limestone that they do not have enough staff to take inmates to medical appointments.

50. Defendant Toney's refusal to ensure that the prison was properly staffed so that inmates could be taken escorted to the infirmary when needed demonstrates that Toney were deliberately indifferent to O'Quinn's need for medical treatment for his serious injuries.

## COUNT III
## SUPERVISORY LIABILITY
## DEBORAH TONEY

51. O'Quinn adopts and incorporates by reference paragraphs 1 through 29 of this Complaint.

52. As warden, Defendant Deborah Toney has a constitutional duty to operate prisons in a manner that is not deliberately indifferent to conditions that pose "a substantial risk of serious harm" to prisoners.

53. Defendant Toney, through her acts and omissions, have engaged in a pattern or practice of systemic deficiencies that resulted in the pattern or practice by Limestone correctional officers of using excessive force.

54. A corrections official acts with deliberate indifference when he "knows of and disregards an excessive risk to a prisoner's health or safety but fails to do anything to prevent the harm.

55. Defendant Toney knew or should have known that failing to ensure that the prison was adequately staffed would jeopardize the health and safety of inmates like Plaintiff.

56. Defendant Toney were aware that there was a high incidence of officer-on-prisoner violence at Limestone, that was likely to result in serious harm, even death, to an inmate, if left unchecked.

57. Defendant Toney knew that excessive force by correction officers was a common occurrence at Limestone that was likely to result in serious injuries, like those sustained by O'Quinn and other inmates.

58. Defendant Toney failed to properly train officers on issues such as use of force and knew or should have known that this failure was likely to result in serious injuries, like those sustained by O'Quinn and other inmates.

59. Defendant Toney failed to implement and enforce policies, procedures, and practices regarding use of force that appropriately guide and monitor the actions of individual security staff.

60. Defendant Toney, through her acts and omissions, has routinely failed to take any corrective measures or punitive actions against corrections officers who violated prisoners' rights, thus allowing this pattern and practice of abuse to continue in violation of prisoners' right to be free from cruel and unusual punishment.

61. When Defendant Toney knew that officers were habitually causes the violation of the constitutional rights of prisoners in his custody but does nothing about it, she essentially established a policy of allowing or even causing the violation of constitutional rights.

62. In particular, Defendant Toney knew that Limestone had so few correctional officers that they had lost control of the institution, but despite requests made to her and to her staff by correctional officers, Toney refused to ask ADOC management for additional officers.

63. Defendant Toney's refusal to request additional officers led to a situation where officers were at the mercy of inmates, according to statements made by officers, who were led to inflict cruel and unusual punishment on inmates simply to intimidate the inmates.

64. Limestone cannot be safely operated with even as few as 30 correctional officers. Defendant Toney failed and/or refused discipline officers because she was afraid of losing those who were already on hand (and who were apparently willing to ignore her willful misconduct), thus making them feel free to engage in the brazen misconduct described in this Complaint.

## COUNT IV
## § 1983-BYSTANDER LIABILITY

65. O'Quinn adopts and incorporates by reference paragraphs 1 through 29 of this Complaint.

66. Defendants Joshua, Jones and Pelzer witnessed Defendant White and the unknown correctional officer using excessive force against Plaintiff and were in close proximity and in a position to intervene but failed to do so.

67. Defendants Joshua, Jones and Pelzer knew that the force used by Defendant White and the unknown officer was excessive and had a duty to intervene where they were in close proximity and in a position to do so.

68. Instead, Defendants Joshua, Jones and Pelzer merely watched as Plaintiff was severely beaten by Defendant White and the unknown correctional officer, in violation of his Eighth Amendment right to be free from cruel and unusual punishment.

69. Defendants Joshua, Jones and Pelzer acted with deliberate indifference to the substantial risk of harm to Plaintiff when they watched Plaintiff being beaten by Defendant White and the unknown correctional officer but failed to intervene.

70. As a direct and proximate results of Joshua, Jones and Pelzer's failure to act, Plaintiff suffered permanent physical injuries, severe mental anguish and emotional distress, all in violation of 42 U.S.C. § 1983.

**WHEREFORE**, O'Quinn prays this Court will award all such compensatory and punitive damages, attorneys fees, costs and such other and further relief to which he may be entitled.

Respectfully submitted,

*/s/ Michele E. Pate*
Michele E. Pate (ASB-4457-E49F)
Law Office of Michele E. Pate
P. O. Box 3391
Jasper, Alabama  35502
(205) 275-1700
mpatelaw@gmail.com

***Attorney for Plaintiff***

## **CERTIFICATE OF SERVICE**

      I hereby certify that I have on July 17, 2023 electronically filed the foregoing Plaintiff's Second Amended Complaint with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record.

                                  */s/ Michele E. Pate*
                                  Michele E. Pate
                                  Attorney for Plaintiff