FILED

2023 Jul-31  PM 05:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| JAMES O'QUINN, AIS # 227546, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 5:21-CV-00461-LSC-SGC |
| | ) | |
| DEBORAH TONEY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' TONEY, JONES, PELZER, JOSHUA, AND WHITE S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

Come now Defendants Warden Toney and officers Jones, Pelzer, Joshua and White and incorporate by referenced as if fully set forth herein their previously filed memorandums of law (Docs. 39, 41, 43) in support of their motions to dismiss (Docs. 38, 40 and 42) the amended complaint and further submit this memorandum of law in support of their Motion to Dismiss the Second Amended Complaint (Doc. 59) pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure.

## INTRODUCTION

While Plaintiff did address some of the ambiguities and issues created by the shot gun pleading contained within the original complaint and the first amended complaint, in the Second Amended Complaint, Plaintiff has created new ones.

Moreover, Plaintiff has failed to correct the other stated issues, such as Plaintiff's failure to state a claim for which relief can be granted

Beyond merely moving the complaint from a shotgun pleading to something the individual defendants can, for the most part, be addressed the Plaintiff has offered conclusory statements to bolster his position and has failed to address other deficiencies pointed out by the Defendants in their response to Plaintiff's first amended complaint.

Plaintiff is now under asserting generic claims that he was denied medical treatment purportedly because of understaffing. However, Plaintiff does not clearly and specifically state who allegedly denied him medical treatment, how and when he was denied the alleged requested medical treatment, or how the alleged denial caused or exacerbated any harm he suffered because of the alleged incident. None of these or the other numerous but small changes[1] alter Plaintiff's allegations enough to fix any of the noted discrepancies in either of the first two complaints, save for shotgun pleading issue. This Court should therefore dismiss Plaintiff's Second Amended complaint for the reasons set forth herein and below.

---

[1] Including, but not limited to, the insertion of the word "Defendant" before a defendant's name, the substitution of the word "Defendants" for those whom the Plaintiff are formally accusing, and the shuffling and/or restructuring (without making alterations to the claim) of statements and paragraphs contained within the Second Amended Complaint.

I.     **Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted in Counts II-IV.**

Throughout the following three alleged counts, namely Failure to Provide Adequate Medical Care (Count II), Supervisory Liability (Count III), and Bystander Liability (Count IV) the Second Amended Complaint still fails to state a claim upon which relief can be granted. A plaintiff must provide "more than labels and conclusions," in their pleading and "a formulaic recitation of the elements of a cause of action will not do," in order to take a complaint from possible to plausible. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plaintiff must assert more than "an unadorned, the defendant-unlawfully-harmed-me accusation." Id. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

This means that when a plaintiff relies upon vague, conclusory allegations, the court must "first separate[e] out the complaint's conclusory legal allegations and then determin[e] whether the remaining well-pleaded factual allegations, accepted as true, 'plausibly give rise to an entitlement to relief. Franklin v. Curry, 738 F.3d 1246, 1251 (11th Cir. 2013).

### A. Count II: Eighth Amendment - Failure to Provide Adequate Medical Care

Warden Toney is the only Defendant against whom the alleged failure to provide adequate medical care claims appears to have been brought. "Plaintiff has "concede[d][2] that he has not stated a viable claim, nor did he intend to, against Defendants Jones, Pelzer and Joshua for failure to provide adequate medical care" and concedes the same with respect to Defendant White[3]. (Doc. 48, p. 5; Doc. 49, p. 6). Plus, Warden Toney who is the only Defendant now mentioned under Count II, was the warden belatedly identified as a Defendant under Count II by way of paragraph 50 which is completely new addition to the Second Amended Complaint. (Doc. 59, ¶¶ 42 -50). And although Plaintiff has, under Count II, "adopt[ed] and incorporate[ed] by reference paragraphs 1 through 29 of this Complaint"[4], those 29 paragraphs say nothing about the Plaintiff having been purportedly denied medical care as vaguely set out under Count II.  Nor is there any reference to Warden Toney in the alleged "Facts" asserted in paragraphs 17 through 29 of the Second Amended Complaint.

Under Count II, Plaintiff alleges in conclusory fashion that "Defendant Toney's [alleged] refusal to ensure that the prison was properly staffed so that

---

[2] Plaintiff's Response In Opposition to Defendant's Motion to Dismiss. (Doc. 48).
[3] Plaintiff's Response In Opposition to Defendant White's Motion to Dismiss. (Doc. 49).
[4] Paragraphs 1-29 of the Second Amended Complaint (Doc. 59) are organized under the following headings: "Parties" (paragraphs 1-13); "Jurisdiction and Venue" (paragraphs 14-16); and alleged "Facts"(paragraphs 17-29).

inmates could be taken escorted to the infirmary when needed [allegedly] demonstrates that Toney were deliberately indifferent to O'Quinn's need for medical treatment for his serious injuries. (See Doc. 59, ¶ 50). How so? Paragraphs 1-29 including the alleged "Facts" are devoid of any reference to any of the conclusory allegations asserted herein in paragraph 50 against Warden Toney.

To show deliberate indifference for an Eighth Amendment violation under Count II, a Plaintiff must show "(1) a subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." Goodman v. Kimbrough, 718 F.3d 1325, 1331–32 (11th Cir.2013) (internal quotation marks omitted). Here, Plaintiff has shown none of these three elements, nor has he provided a single fact that supports any one (much less all three) of these elements or show how these elements could plausibly be met against Warden Toney or anyone else.

Plaintiff has failed to satisfy his obligation to explain why he is entitled to relief against Warden Toney under Count II for alleged failure to provide adequate medical care. Plaintiff has not offered any specific facts to support the inference that Warden Toney was aware of the alleged excessive use of force or was aware of the alleged requests for medical care or was on the premises when any of these events allegedly occurred. Instead, Plaintiff expects this Court to infer, *without*

*offering any alleged facts to that effect* that the foregoing is true and then claims in conclusory self-serving fashion that alleged understaffing is the proximate cause of the purported alleged failure to provide medical care. And that Warden Toney alone is the cause of Plaintiff's alleged inadequate medical care by virtue of her position as Warden. Given the number of speculative inferences that must be made in order to span Plaintiff's overreaching stretch of attempted logic, Plaintiff undoubtedly has failed to state a claim for failure to provide adequate medical care against Warden Toney and Count II should be dismissed as a matter of law.

### B. Count III: Supervisory Liability – Deborah Toney

The Plaintiff's baseless Section 1983 claim against Warden Toney based on supervisor liability fails as a matter of law. The Second Amended Complaint makes clear that Warden Toney has been singled out as a Defendant in this action solely because of her supervisory position as a Warden at Limestone Correctional Facility ("Limestone").

At the outset and under that section of the Second Amended Complaint wherein the parties are listed, Plaintiff asserts that "Defendant Toney was the Warden of Limestone Correctional Facility at all times relevant to this lawsuit" and, "as Warden, was legally responsible for prison operations at Limestone Correctional Facility, as well as for the safety and welfare of the inmates confined there." (Doc. 59, paragraphs 4-5). Significantly, Defendant Toney is not mentioned

again in the Second Amended Complaint until she is identified as a Defendant under Count II at paragraph 50 because of her supervisory position.

However, "[I]t is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Harrison v. Culliver, 746 F.3d 1288, 1299 (11th Cir. 2014) (quoting Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003)); *see also* Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999); Belcher v. City of Foley, 30 F.3d 1390, 1296 (11th Cir. 1994). Instead, "a plaintiff seeking to hold a supervisor liable for constitutional violations must show that the supervisor either participated directly in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation." Id. (citing Cottone, 326 F.3d at 1360). Also see, Harper v. Lawrence County, 592 F.3d 1227, 1234-6 (11th Cir. 2010) (dismissing supervisory claims where complaint failed to allege "how the other three [d]efendants...could possibly have had such actual knowledge."). Here, the Plaintiff does not allege that Warden Toney participated in any way in the alleged unconstitutional conduct.

"[T]he standard by which a supervisor is held liable in [her] individual capacity for the actions of a subordinate is extremely rigorous." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003), abrogation in part on other grounds recognized by Stallworth v. Wilkins, 802 F. App'x 435 (11th Cir. 2020); see also Iqbal, 556 U.S. at

677 ("In a § 1983 suit . . .  where masters do not answer for the torts of their servants – the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). The Second Amended Complaint still fails to allege facts that plausibly meet this rigorous standard as to Warden Toney.

The necessary causal connection can be shown "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and [she] fails to do so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (quoting Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003)). To qualify as "widespread abuse" sufficient to put a supervising official on notice, the alleged constitutional violations '"must be obvious, flagrant, rampant, and of continued duration rather than isolated occurrences.'" Keith v. DeKalb County, Georgia, 749 F.3d 1034, 1048 (11th Cir. 2014) (quoting Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999)). Plaintiff has failed to meet this standard for supervisory liability.

Plaintiff O'Quinn has failed to assert facts demonstrating a causal connection between the actions of Warden Toney and the alleged excessive use of force or the alleged failure to provide adequate medical care. Plaintiff does not contend that Warden Toney participated directly in the unconstitutional conduct.

Plaintiff O'Quinn has failed to assert facts demonstrating a causal connection between the actions of Warden Toney and the alleged excessive use of force or failure to provide adequate medical care. Plaintiff does not contend that Warden Toney participated directly in the unconstitutional conduct. Further, Plaintiff failed to demonstrate a sufficient "history of widespread abuse" to state a claim for supervisory liability them.

Plaintiff has not shown how Warden Toney "participated directly in the unconstitutional conduct" nor has the Plaintiff shown "a history of widespread abuse." Instead, Plaintiff alleges wholly unsubstantiated "deliberate indifference" claims and continues to fail to provide any support for the three requirements for such a claim. Goodman, 718 F.3d at 1331-32 (11th Cir. 2013). For instance, Plaintiff claims in barebones fashion that "Defendant Toney, through her [alleged] acts and omissions, have engaged in a pattern or practice of [alleged] systemic deficiencies that resulted in the pattern or practice by Limestone correctional officers of using excessive force." (Doc. 59, paragraph 53). Yet, beyond this self-serving allegation, the alleged "Facts" are devoid of any allegation about this.

Plaintiff makes baseless and broad accusations regarding the behavior and training of the officers on staff, as well as claims of alleged criminal and unconstitutional conduct that is not the subject of this complaint, and Plaintiff makes more conclusory, speculative, and inflammatory  allegations regarding the

day-to-day operations of Toney, the prison itself, the officers and alleged constitutional rights violations against an unspecified number of prisoners certainly extending well beyond the Plaintiff here and the isolated incident in issue. See Doc. 59, p. 10, ¶¶ 56-64.

Ultimately, Plaintiff has failed to demonstrate a sufficient "history of widespread abuse" to state a claim for supervisory liability. Vague references to a U.S. Department of Justice investigation and/or its -pending lawsuit are wholly insufficient. There is no indication or evidence that Warden Toney was the Warden, or on duty, at the facility during these events referenced by Plaintiff. As such, Plaintiff's allegations fail to plead a plausible claim for constitutional violations committed by Warden Toney and Count II and Count III are thus due to be dismissed.

### C. Count IV, Bystander Liability

To demonstrate bystander liability, Plaintiff "must show a 'necessary causal link' between the officer's failure to act reasonably and the plaintiff's injury." Marbury v. Warden, 936 F.3d 1227, 1233 (11th Cir. 2019). Regarding causation, the "critical question" is whether the officer was in a position that would enable them to intervene and avert the injury but through deliberate indifference, failed to do so. *See* Rodriguez v. Sec'y for Dep't of Corrs., 508 F.3d 611, 622-23 (11th Cir. 2007). Then, if a Plaintiff intends to show a deliberate indifference for an Eighth

Amendment violation, they must show "(1) a subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." Goodman, 718 F.3d at 1331–32 (11th Cir.2013) (internal quotation marks omitted). Plaintiff has not done this. Further, although the Eleventh Circuit has stated that a supervisor's custom or policy that results in deliberate indifference, "or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that [they] would act unlawfully and failed to stop them from doing so," none of which is alleged and supported by the Plaintiff here. Harper v. Lawrence Cnty., Ala., 592 F.3d 1227, 1236 (11th Cir. 2010) (quoting Cottone, 326 F.3d at 1360–61 (11th Cir. 2003); see also Marbury, 936 F.3d at 1234 (holding that fifteen incidents of violence over a period of six years was insufficient to provide supervisors notice of constitutional violation); Harrison, 746, F.3d at 1299-1300 (finding that thirty-three incidents over three years not sufficient to establish widespread abuse).

Plaintiff fails to articulate how intervention would have "enabled [Joshua, Jones, and Pelzer] to intervene and avert the injury," and instead expects this Court to infer this conclusion simply because Plaintiff claims they showed up at some time after he was maced but before the alleged beatings ceased.

Beyond that, Plaintiff's only attempt at meeting the deliberate indifference burden was by way of conclusory statements and unsupported claims that Warden

Toney was turning a blind eye to an unspecified and unsupported number of alleged incidents Plaintiff mentioned but failed to provide any facts, instead resorting to more conclusory statements, and relying entirely upon an inadmissible DOJ statement of unproven allegations[5] to support those conclusions. As such, Count IV is due to be dismissed as a matter of law for failure to state a claim.

## II. The Doctrine of Qualified Immunity Bars Plaintiff's Claims Against Defendants Toney, Jones, Pelzer, Joshua and White, in Their Individual Capacities.

Although § 1983 creates a private right of action for deprivation of constitutional rights under color of state law, "[q]ualified immunity shields federal and state officials from money damages unless a plaintiff [establishes] facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct. Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011). Qualified immunity protects a public official acting within his or her discretionary authority not only from liability, but also from '"the other burdens of litigation, including discovery.'" Chesser v. Sparks, 248 F.3d 1117, 1122 (11th Cir. 2001) (quoting Lassiter v. Ala. A&M Univ., Bd. of Trustees, 28 F.3d 1146, 1149 (11th Cir. 1994)).

---

[5] The DOJ's alleged findings upon which the Plaintiff appears to rely, represent merely unproven allegations, which is not admissible by its very terms and cannot satisfy the allegations Plaintiff attempts to use it as "[t]he Department does not serve as a tribunal authorized to make factual findings and legal conclusions binding on, or admissible in, any court, and nothing in this Notice Letter should be construed as such. Accordingly, this notice is not intended to be admissible evidence and does not create any legal rights or obligations."

Because qualified immunity entitles the public official to immunity from suit, courts "'repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" Pearson v. Callahan, 555 U.S. 223, 232 (2009) (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991)). Qualified immunity questions can be raised and considered on a motion to dismiss. See Chesser, 248 F.3d at 1121[6]

To be entitled to the qualified immunity defense, the government actor must first "show that he acted within his discretionary authority." Lewis v. City of W. Palm Beach, Fla., 561 F.3d 1288, 1291 (11th Cir. 2009). The burden then shifts to the plaintiff to "establish that the defendant violated a constitutional right" and that the "violated right was 'clearly established.' Corbitt v. Vickers, 929 F.3d 1304, 1311 (11th Cir. 2019); see also Lewis, 561 F.3d at 129; Caldwell v. Brogden, 678 So. 2d 1148, 1151-52 (Ala. Civ. App. 1996); Sexton, 748 So. 2d at 216-17." If the plaintiff fails to carry this burden, qualified immunity applies and protects the public official from the plaintiff's suit. Throughout the analysis, it must be kept in mind that "qualified immunity for government officials is the rule," not the exception. Alexander v. Univ. of N. Fla., 39 F.3d 290, 291 (11th Cir. 1994).

---

[6] As recognized by this Court in Hadder v. Walker County, Alabama, "[t]he Court must consider the defense of qualified immunity as soon as possible in the litigation, including at the motion to dismiss stage." No. 6:14-cv-00586-LSC, 2014 WL 4957231, at *4 (N.D. Ala. Oct. 2, 2014) (citing Hunter v. Bryant, 502 U.S. 224, 233-34 (1991)).

**A. Defendants Toney, Jones, Pelzer, Joshua, and White, Acted Within Their Discretionary Authority.**

Warden Toney and correctional officers Jones, Pelzer, Joshua, and White, acted at all times within their discretionary authority related to Plaintiff's claims against them. A government employee ats within his or her discretionary authority when he or she performs "a legitimate job-related function through means that were within his or her power to utilize." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004). To answer this, the Court should examine "whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." Plotkin v. United States, 465 F. App'x 828, 831-32 (11th Cir. 2012) (quoting Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1282 (11th Cir. 1998)). The only question to consider is whether the acts "are of a type that fell within the employee's job responsibilities." Holloman, 370 F.3d at 1265. All allegations against Defendant Toney in the Second Amended Complaint reference her acting in her capacity as the Warden of Limestone. And all allegations against Jones, Pelzer, Joshua, and White in the Second Amended Complaint reference the defendants acting in their capacity as Correctional Officials.

**B. The Alleged Conduct of Defendants Warden Toney and Correctional Officers Jones, Pelzer, and Joshua Did Not Violate Plaintiff's Constitutional Rights.**

Considering that Warden Toney and officers Jones, Pelzer, Joshua, and White acted within her or his role as a State employee, the burden now shifts to Plaintiff to demonstrate that each of these defendants violated his constitutional rights. Lewis v. City of W. Palm Beach, Fla., 561 F.3d 1288, 1291 (11th Cir. 2009). Plaintiff cannot do so. To reach this mark, Plaintiff must overcome two hurdles to determine whether an official violated a party's constitutional rights. The first hurdle requires the Plaintiff to sufficiently allege that the official's conduct violated a constitutionally protected right. The second hurdle requires the Plaintiff to demonstrate that the right was clearly established at the time of the misconduct. See Pearson v. Callahan, 555 U.S. 223, 232 (2009) (resolving qualified immunity claims require a "two-step sequence" requiring a court to decide whether a plaintiff's allegations make out a violation of a constitutional right and whether the right at issue was clearly established at the time of defendant's alleged misconduct); see also Grider v. City of Auburn, 618 F. 3d 1240, 1254 (11th Cir. 2010) (courts use "a two-part process to evaluate qualified immunity). Plaintiff must satisfy both prongs of the analysis to overcome a defense of qualified immunity. Grider, 618 F.3d at 1254. As explained below, Plaintiff fails to clear either hurdle

**C. Plaintiff fails to identify a constitutional violation.**

With respect to the "Supervisory Liability" claim against Warden Toney under Count III, Plaintiff alleges that "Defendant Toney knew that excessive force by corrections officers was [allegedly] a common occurrence at Limestone that was likely to result in serious injuries, *like those* sustained by O'Quinn *and other inmates*." (Doc. 59 at ¶57) (Emphasis added). However, Plaintiff has failed to allege that Defendant Toney personally participated in the violation of his constitutional rights or was even aware of the alleged violations.

And with respect to Plaintiff's claims against the correctional officers, he initially alleges in his Second Amended Complaint that two different officers assaulted him, neither of whom were Defendants' Jones, Pelzer, or Joshua. Plaintiff then claims Defendants Jones, Pelzer, and Joshua arrived on the scene after Plaintiff had been maced and allegedly kicked and beaten, but that these three defendants allegedly failed or refused to stop the alleged beating. Further, the second amended complaint acknowledges that the Plaintiff appeared to be intoxicated to the officer who immediately handcuffed him prior to the aforesaid alleged incident and that the officer who handcuffed the Plaintiff verbally made this observation i.e., "that O'Quinn appeared intoxicated", which could justify, as a matter of law, some use of force against him by Defendant White. If the use of force is justified in some way, there is no failure to intervene or failure to protect.

### III. Plaintiff fails to establish a causal link between the alleged conduct of Defendants Toney, Jones, Pelzer, Joshua, and White and Plaintiff's harm.

Plaintiff "must show a 'necessary causal link' between the officer's failure to act reasonably and the plaintiff's injury." Marbury, 936 F.3d at 1233 (quoting Rodriguez v. Sec'y for Dep't of Corrs., 508 F.3d 611, 622-23 (11th Cir. 2007)). Regarding causation, the "critical question" is whether the officer was 'in a position to take steps that could have averted the [injury] ... but, through [deliberate] indifference, failed to do so.'" Rodriguez, 508 F.3d at 622 (quoting Williams, 689 F.2d at 1384).

With respect to alleged supervisory liability, the Eleventh Circuit recognizes at least "three ways to establish such a causal connection":

When a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fails to do so. Alternatively, the causal connection may be established when a supervisor's custom or policy ... result[s] in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so. Harper v. Lawrence County, Ala., 592 F.3d 1227, 1236 (11th Cir. 2010) (quoting Cottone v. Jenne, 326 F.3d 1352, 1360-61 (11th Cir. 2003)); see also Marbury, 936 F.3d at 1234 (plaintiff witnessed fifteen (15) incidents of

violence over a period of six years failed to provide supervisors notice of a constitutional violation); Harrison, 746 F.3d at 1299-1300 (thirty-three (33) incidents over three years not sufficient to establish widespread abuse). As stated above, Plaintiff failed to allege widespread abuse, and Plaintiff makes no allegations that Toney directed subordinates to act unlawfully, or knew they acted unlawfully and failed to stop them. As such, Plaintiff's only other option concerns a supervisor's custom or policy that "results in deliberate indifference to constitutional rights." Harper, 592 F.3d at 1236.

Plaintiff has failed to demonstrate the existence of such supervisory custom or policy and therefore fails to assert allegations sufficient to state a claim for deliberate indifference. Plaintiff's failure to demonstrate a causal link between Warden Toney's actions and Plaintiff's purported harm prevents a finding of a constitutional violation. As a result, Plaintiff's constitutional claims fail on their face, and qualified immunity protects Toney from Plaintiff's claim.

With respect to the correctional officers Plaintiff fails to articulate how intervention would have "enabled [Joshua, Jones, and Pelzer] to intervene and avert the injury," and instead expects this Court to infer this conclusion simply because the Plaintiff claims Jones, Pelzer, and Joshua appeared at some time after Plaintiff was maced but before the alleged beatings ceased. As a result, Plaintiff's

constitutional claims fail on their face and qualified immunity protects Defendant's Jones, Pelzer, White, and Joshua.

### IV. Plaintiff fails to plausibly allege that Warden Toney failed to provide adequate medical care.

No allegations about lack of medical care appear in the factual section of the Second Amended Complaint. And, as noted above, there is not a single reference to Warden Toney in the "Facts" section of the Second Amended Complaint either. (Doc. 59, ¶¶ 17-29). Plaintiff therefore fails to assert a constitutional claim for deliberate indifference to his serious medical need. As such, qualified immunity protects Warden Toney from Plaintiff's claims.

### V. Plaintiff fails to allege any Clearly Established Constitutional Right.

To meet his burden of establishing a constitutional right recognized by "clearly established" law, Plaintiff must identify controlling decisions in the jurisdiction in which the action is pending. Marsh v. Butler Cnty., Ala., 268 F.3d 1014, 1032 n. 10 (11th Cir. 2001) (en banc). The existing precedent presented by a plaintiff must place the constitutional question beyond debate. Malley v. Briggs, 475 U.S. 335, 341 (1986); Ashcroft, 563 U.S. at 741 ("A government official's conduct violates clearly established law when at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right."). A public official

is not liable for a bad guess in a gray area; he or she is only liable for transgressing bright lines. See Id.

Admittedly, "[t]he difficult part of this inquiry [i.e., the identification of clearly established law] is identifying the level of generality at which constitutional rights must be clearly established." Casey v. City of Fed. Heights, 509 F.3d 1278, 1284 (10th Cir. 2007). The United States Supreme Court, however, has "repeatedly told courts ... not to define clearly established law at a high level of generality." Ashcroft, 563 U.S. at 742 ("The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established.") (internal citations omitted). Recent case law makes clear that the level of violence necessary to put the Correctional Officials on notice must equate to "a prison 'where violence and terror reign.'" Marbury, 936 F.3d at 1243 (quoting Harrison, 746 F.3d at 1299-1300).

## VI.    Plaintiff's Claims are Barred by the Statute of Limitations.

The statute of limitations for a civil rights action filed pursuant to 42 U.S.C. § 1983 is two years. See Lufkin v. McCallum, 956 F.2d 1104, 1106 (11th Cir. 1992) ("In Owens v. Okure, the Supreme Court held that in section 1983 suits the federal courts are to borrow the 'general' or 'residual' statute of limitations for

personal injuries provided under the law of the state where the court hearing the case sits [and ]n the instant case, [in Alabama] that period is two years.")

According to the Second Amended Complaint, Plaintiff was injured when assaulted by ADOC staff on March 29, 2019. (Doc. 59, p. 8, ¶ 43). The original complaint was filed on March 29, 2021, the day the statute ran.

Plaintiffs have 90 days to perfect service after a complaint is filed. (See Fed. R. Civ. P. 4(m)) Yet Defendants were not served within that 90-day period. It appears that they were not in fact served until October 12-14 of 2021, about five and a half months after filing and the statute of limitations had run. (Doc. 4).

The Federal District Court for the Northern District of Georgia faced a similar fact pattern – the complaint was filed one day before the statute ran with several defendants going several months thereafter without being served – and dismissed the claims.

> For one, the original complaint in this case as filed just a day before the expiration of the statute of limitations. Although this fact, in and of itself, is not in any way outcome-determinative, it is signification, given Plaintiff's inaction from April 18, 2012 until August 29, 2013 concerning the identification of the Doe Defendants and Inspector Doe and obtaining contact information for Defendant Hayes, whom Plaintiff even identified in the original complaint.

Stevens v. Holder, No. 1:12-CV-1352-ODE, 2014 WL 12799005, at *12 (N.D. Ga. Jan. 31, 2014).

Similarly, the Fifth Circuit affirmed the district court's dismissal of a complaint in a comparable scenario based on reasoning set out below:

Delay alone can infuse an adverse element into the proper flow of litigation: evidence deteriorates or disappears, memories fade, and witnesses die or move away. If the delay is unjustified, the court can and must act to redress the balance. To require the manufacturers of hull and motor of the sailboat to defend a redhibitory action under the circumstances presented here, would be manifestly unjust. Our colleagues of the Ninth Circuit addressed the question of delay and the propriety of a dismissal under Rule 41(b) in Anderson v. Air West, Inc., 542 F.2d 522, 525 (1976):

Delay in serving a complaint is a particularly serious failure to prosecute because it affects all the defendant's preparations. To permit a delay in service when the complaint is served immediately prior to the running of the statute of limitations undercuts the purposes served by the statute. Once the statute has run, a potential defendant who has not been served is entitled to expect that he will no longer have to defend against the claim. If service can be delayed indefinitely once the complaint is filed within the statutory period, these expectations are defeated and the statute of limitations no longer protects defendants from stale claims.  Dewey v. Farchone, 460 F.2d 1338 (7th Cir. 1972).

*We underscore the necessity for reasonable and diligent pursuit of all cases and claims initiated, and we emphasize our concern that undue delay is to be avoided, particularly delay in those instances in which the defendant does not have knowledge of an outstanding claim. We view a delay between filing and service as being more likely to result in prejudice than a delay occurring after service, for in the former situation the defendant is not put on formal notice and allowed a full opportunity to discover and preserve relevant evidence when the matter is still relatively fresh and the evidence is intact and available. A delay between filing and service ordinarily is to be viewed more seriously than a delay of a like period of time occurring after service of process.*

<u>Veazey v. Young's Yacht Sale & Serv., Inc.</u>, 644 F.2d 475, 477-78 (5th Cir. 1981).

(Emphasis added).

## **<u>Conclusions</u>**

For the foregoing reasons, the Second Amended Complaint, and all claims asserted against Defendants Toney, Jones, Pelzer, Joshua, and White in the Second Amended Complaint, are due to be dismissed.

Respectfully submitted,

Steve Marshall
*Attorney General*

*/s/ Mary Goldthwaite*
*Mary Goldthwaite*
*Assistant Attorney General*
OFFICE OF ATTORNEY GENERAL
501 Washington Avenue
Montgomery, Alabama 36130-0152
(334) 242-7300 (T)
(334) 353-8400 (F)
Mary.Goldthwaite@AlabamaAG.gov

***Counsel for Defendants Toney, White, Jones, Pelzer, and Joshua***

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 31st day of July, 2023, I electronically filed the foregoing Defendants' Motion to Dismiss Second Amended Complaint with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following (or by U.S. Mail to the non-CM-ECF participants):

Michele E. Pate
Law Office of Michele E. Pate
PO Box 3391
Jasper AL 35502
mpatelaw@gmail.com

> */s/ Mary Goldthwaite*
> *Of Counsel*